[Cite as *Citibank N.A. v. Rowe*, 2013-Ohio-523.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| CITIBANK (SOUTH DAKOTA) NA | C.A. No.     12CA010217 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| HARLEY E. ROWE | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.     11CV171804 |

DECISION AND JOURNAL ENTRY

Dated: February 19, 2013

WHITMORE, Judge.

{¶1}   Defendant-Appellant, Harley Rowe, appeals from a judgment of the Lorain County Court of Common Pleas, granting Appellee, Citibank (South Dakota), N.A.'s ("Citibank SD"), motion for summary judgment.  This Court reverses.

I

{¶2}   In April 2011, Citibank SD filed a complaint against Rowe alleging default on two separate credit card accounts, a Choice Visa and a Sears MasterCard.  Rowe filed an answer and a counterclaim, arguing, among other things, that Citibank SD was not properly registered with Ohio's Secretary of State and therefore could not bring the action in an Ohio state court.  Citibank SD filed a brief in response and argued that it was exempt from state registration requirements because it was a national bank organized under the National Bank Act.  Subsequently, the court granted Citibank SD's motion to dismiss Rowe's counterclaim.  No appeal was filed from this order.

**{¶3}** In July 2011, Citibank SD merged into Citibank, N.A. ("Citibank"). Subsequently, Citibank filed a motion for summary judgment. Rowe filed a brief in opposition, again arguing that Citibank did not have standing to maintain the action because it was not registered with the secretary of state. In addition, Rowe argued that Citibank SD had not proven that it owned the debts involved. Citibank filed a reply in which it argued that Citibank was a national bank and exempt from the state registration requirements and attached documentation that Citibank SD had merged into Citibank in July 2011.

**{¶4}** The court granted Citibank's motion for summary judgment. Rowe now appeals and raises one assignment of error for our review.

II

Assignment of Error

APPELLEE'S SUMMARY JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF ARTICLE IV, SECTION 3, OF THE OHIO CONSTITUTION.

**{¶5}** In his sole assignment of error, Rowe argues the court erred by granting Citibank SD's motion for summary judgment because (1) Citibank SD did not have standing to bring the suit; (2) Citibank SD provided insufficient account details; and (3) the court improperly dismissed Rowe's counterclaim.

**{¶6}** To prevail on a motion for summary judgment, the moving party must show:

(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.

*Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher*

*v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293. This Court reviews an award of summary judgment de novo and views the evidence in the light most favorable to the non-moving party. *Grafton* at 105; *Doss v. State*, Slip Opinion No. 2012-Ohio-5678, ¶ 18.

Standing & Jurisdiction

**{¶7}** Rowe argues that Citibank SD was not the real party in interest, and therefore, it was unable to invoke the jurisdiction of the court. Thus, Rowe argues, the court was without authority to enter a default judgment against him.

**{¶8}** "It is fundamental that a party commencing litigation must have standing to sue in order to present a justiciable controversy and invoke the jurisdiction of the common pleas court." *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 41. Standing requires, at a minimum, that the plaintiff has suffered an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing is determined at the time of the commencement of the action. *Schwartzwald* at ¶ 27-28.

    a. Choice Visa

**{¶9}** In count one of the complaint, Citibank SD alleged Rowe defaulted on a Choice Visa account and attached a December 2009 statement. This statement contains no information about Citibank SD, but does include the web address www.paymentsolutions.citicards.com. Similar statements were attached to Citibank's motion for summary judgment.

**{¶10}** Citibank has maintained that the Choice Visa account is, and always has been, owned by Citibank. However, it is unclear from the record whether the account was ever owned

by Citibank SD. Because Citibank SD commenced the action against Rowe, the issue is whether Citibank SD owned the Choice Visa account at the time it filed the complaint.

b. Sears Account

{¶11} In count two of the complaint, Citibank SD alleged that Rowe defaulted on a Sears MasterCard account. A May 2010 account statement was attached to the complaint. The statement included the following notice: "This Account is issued by Citibank (South Dakota), N.A." Additional statements were attached to Citibank's motion for summary judgment, most of them similar.

{¶12} After Rowe challenged Citibank SD's ownership of the account, Citibank filed two letters from the Office of the Comptroller of the Currency ("OCC"). The first letter, CRA Decision #117, dated November 2003, indicates the OCC's approval of Citibank USA, N.A.'s application "to purchase substantially all of the assets of Sears National Bank, [N.A.]" However, the letter states that, upon receipt of the required documents from Citibank USA, N.A., the OCC would "issue a letter certifying consummation of the transaction." The letter further states that "[i]f the asset purchase is not consummated within one year from the approval date, the approval shall automatically terminate, unless the OCC grants an extension of the time period." Thus, the OCC letter does not confirm that Citibank USA, N.A. purchased the assets of Sears National Bank, N.A., it merely confirms that the OCC granted approval for such a transaction to take place. Moreover, even assuming Citibank USA, N.A. had purchased the debt from Sears National Bank, N.A., it was Citibank SD that had to prove that it had ownership of the debt at the time the suit was filed.

{¶13} Citibank argued that it had ownership of the account because Citibank USA, N.A. merged into Citibank (South Dakota), N.A. in October 2006. To support its argument, Citibank

attached another letter from the OCC, Corporate Decision #2006-08, dated September 2006. In this letter, the OCC approved the application for the "internal reorganization of various Citigroup, Inc., banking subsidiaries and certain affiliates that will combine a significant portion of Citigroup, Inc.'s domestic commercial and retail branch banking operations into Citibank, National Association, and its credit card operations into Citibank (South Dakota), N.A." This letter is similar to the 2003 letter discussed above, in that it merely gave approval for the reorganization. The letter does not indicate that such reorganization actually took place. In fact, page 10 of the letter sets forth additional documentation that must be submitted prior to the merger (i.e. "1. A Secretary's Certificate for each institution, certifying that a majority of the board of directors approved. 2. An executed merger or purchase and assumption agreement and, if necessary, the Amended Articles of Association. 3. A Secretary's Certificate from each institution, certifying that the shareholder approvals have been obtained, if required."). This letter also contains an expiration date, one year from the approval date, unless the OCC granted an extension.

{¶14} After a careful review of the record, we conclude there is a genuine issue of material fact as to whether, at the time the suit was filed, Citibank SD owned Rowe's debts. If the debts were owned by another entity within Citibank, there is a genuine issue of material fact as to whether Citibank SD, a subsidiary, was legally entitled to sue for their collection. Citibank does not argue, or set forth any case law to support, that Citibank SD, a subsidiary, had the right to sue for the collection of debts owned by its parent corporation or affiliate. Thus, in viewing the evidence in a light most favorable to Rowe, the court erred in granting Citibank's motion for summary judgment.

Registration

{¶15} Rowe further argues that Citibank SD did not have standing to file the lawsuit because it had not registered with Ohio's Secretary of State pursuant to R.C. 1329.10(B). Specifically, Rowe argues that Citibank SD is a fictitious name and therefore was required to report to the secretary of state prior to the commencement of this action.

{¶16} R.C. 1329.10(B) requires a "person doing business under a trade name or fictitious name" to register the trade name with, or report the fictitious name to, the secretary of state prior to filing an action. Citibank, on the other hand, argues that it is exempt from state registration requirements under the National Bank Act.

> Business activities of national banks are controlled by the National Bank Act (NBA or Act), 12 U.S.C. § 1 et seq., and regulations promulgated thereunder by the Office of the Comptroller of the Currency (OCC). *See* §§ 24, 93a, 371(a). As the agency charged by Congress with the supervision of the NBA, OCC oversees the operations of national banks and their interactions with customers. *See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 254, 256 (1995). The agency exercises visitorial powers, including the authority to audit the bank's books and records, largely to the exclusion of other governmental entities, state or federal. *See* § 484(a); 12 CFR § 7.4000 (2006).

*Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007). Again, however, it was Citibank SD, not Citibank, who commenced the action against Rowe. Material issues exist as to whether, at the time the complaint was filed, Citibank SD was a registered national bank and, if so, whether the NBA preempts state registration requirements. *See, e.g.*, R.C. 1703.031. If Citibank SD was not a registered national bank, further material issues exist as to whether its parent corporation was, and if the NBA exempts subsidiaries from state registration requirements.

{¶17} The trial court did not address these issues in its judgment entry. Because genuine issues of material fact exist here as to account ownership and the bank's registration

requirements, the trial court erred by granting Citibank's motion for summary judgment. Accordingly, to that extent, Rowe's assignment of error is sustained.

Insufficient Account Details

{¶18} Rowe additionally argues that the court erred in not requiring Citibank to provide additional account details. Because we have reversed the court's granting of Citibank's motion for summary judgment, we conclude this issue is not ripe for review and decline to address it.

Counterclaim

{¶19} Lastly, Rowe argues that the trial court erred in dismissing his counterclaim. However, Rowe does not set forth a separate assignment of error related to his counterclaim. An appellant's "assignment of error provides a roadmap for our review and, as such, directs our analysis of the trial court's judgment." *State v. Brown*, 9th Dist. No. 23637, 2008-Ohio-2670, ¶ 24, citing *Hamlin-Scanlon v. Taylor*, 9th Dist. No. 23773, 2008-Ohio-411, ¶ 8, and App.R. 16.

{¶20} Because Rowe's sole assignment of error relates to the trial court's granting of summary judgment in favor of Citibank, we decline to address his arguments regarding the trial court's dismissal of his counterclaim. *See* App.R. 12(A)(2), 16(A).

III

{¶21} Rowe's assignment of error, as it relates to the ownership of the debt and the bank's state registration requirements, is sustained. His assignment of error, as it relates to the accounting details provided, is not yet ripe for review, and his argument related to the dismissal of his counterclaim was not properly raised. The judgment of the Lorain County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETH WHITMORE
FOR THE COURT

MOORE, P. J.
CARR, J.
CONCUR.


APPEARANCES:

ROBERT W. GRAY, Attorney at Law, for Appellant.

JAMES Y. OH, MELISSA A. HAGER, and ERIC S. PETERSON, Attorneys at Law, for Appellee.