[Cite as *CITIBANK, N.A. v. Hine*, 2019-Ohio-464.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

CITIBANK, N.A.                              :
                                            :
    Plaintiff-Appellee,                 :        Case No. 17CA3624
                                            :
    vs.                                 :
                                            :        <u>DECISION AND JUDGMENT</u>
KATHERINE HINE,                             :        <u>ENTRY</u>
                                            :
    Defendant-Appellant.                :
                                            :        **Released: 02/07/19**
_____

<u>APPEARANCES:</u>

David L. Kastner, Attorney at Law, Beavercreek, Ohio, Pro Se Appellant.

Katherine Hine, Chillicothe, Ohio, Pro Se Appellant.

Robert C. Folland and David J. Dirisamer, Barnes & Thornburg LLP, Columbus, Ohio for Appellee Citibank, N.A.
_____

McFarland, J.

{¶1} Appellant Katherine Hine and interested party Appellant David L. Kastner, Hine's prior attorney, jointly appeal various entries of the Ross County Court of Common Pleas. Appellants have set forth six assignments of error challenging the propriety of the trial court's ruling on the parties' motions for summary judgment, Appellee Citibank, N.A.'s motion for directed verdict, and the parties' motions for sanctions. Upon review of the record, we find merit to the first assignment of error. Accordingly, we

affirm in part, reverse in part, and remand the matter to the trial court for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} On April 4, 2016, Citibank, N.A., successor to Citibank (South Dakota), N.A. (hereinafter "Citibank"), filed a complaint on a credit card account debt, alleging Katherine Hine owed the sum of $15,013.83. Attached to the complaint was a Sears Mastercard account statement in the name of Katherine Hine and addressed to her at 189 E. Water Street Rear, Chillicothe, Ohio. The due date of the amount due was November 13, 2015. The statement also reflected an interest rate of 25.24% on all regular purchases. This appeal challenges various trial court rulings and involves a voluminous trial court record, all of which arose from what appeared at the outset to be a "rather straightforward collections case."[1]

{¶3} On May 4, 2016, Katherine Hine filed a motion to dismiss the complaint by and through her attorney, David L. Kastner.[2] Among other assertions, she argued that Citibank had no standing to establish its right to collect on the Sears credit card account. Citibank filed a Brief in Opposition to Defendant's Motion to Dismiss. Hine filed a reply brief. The trial court denied Hine's motion to dismiss.

---

[1] This comment is taken from expert witness testimony at a sanctions' hearing in this case.
[2] Hereinafter, these Appellants will be referenced as "Hine" and "Kastner."

{¶4} Suffice it to say, there were numerous filings in the underlying proceedings, which necessitated responsive pleadings from the adverse party. While we set forth an outline of the proceedings here, in the interest of brevity, we will set forth additional pleadings and dates in the body of this opinion, where pertinent.

{¶5} On September 6, 2016, Hine filed a Jury Demand. On October 18, 2016, the court filed a pretrial conference Order which explicitly stated at the last paragraph: "The Court directs that the attorney or attorneys who will try this case shall be present at the pretrial." Attorney Kastner later filed a Motion to Convert December 2016 Pre-Trial Conference to Phone Conference. The trial court granted Kastner's request. Subsequent to the telephone pre-trial conference, the court filed an entry scheduling a jury trial date of August 3, 2017.

{¶6} Citibank filed notices of the depositions of Hine and another person, Karen Stanley. Hine subsequently filed a "Notice Re Court's Scheduling." This pleading sets forth 12 paragraphs of information for purposes of "notice for the record." Hine advises of the intent to appeal the court's orders compelling the depositions of Ms. Stanley and herself. Several pertinent paragraphs are set forth as follows:

"3. The aforementioned orders were never sent to co-counsel Robert Fitrakis, evidently because this court did not instruct the clerk to do so.[3]

\* \* \*

5. Without an extensive amount of prior notice, co-counsel has long been unavailable for hearings on Tuesdays and Thursdays because of his teaching responsibilities.

\* \* \*

7. The court's scheduling of May 2 was done without consulting with co-counsel's schedule.  Co-counsel and counsel share the representation.  The undersigned generally does not make court appearances in this case due to his responsibilities with contract work involving the U.S. military."

**{¶7}** On April 26, 2017, Hine, through Kastner, filed a Motion for Stay to the Trial court, pending her appeal, supported by affidavits from Stanley, Kastner, and herself.  On May 4, 2017, the trial court overruled the motion for stay.[4]  Hine's appeal to this court was eventually dismissed. *See Citibank N.A. v. Hine*, 2017-Ohio-5537, 93 N.E.3d 108 (4th Dist.).

**{¶8}** On May 8, 2017, Attorney Fitrakis filed a Motion for Leave to Withdraw as Defendant's Attorney.  In the motion, Attorney Fitrakis advised he was engaged "ostensibly" because Attorney Kastner was unavailable to attend a previous hearing and that he had not been engaged for future activity.  Attorney Fitrakis attached an email from Attorney Dirisamer

---

[3] The record does not reflect that Attorney Fitrakis ever filed a formal notice of appearance in this matter.
[4] The Journal Entry was signed by Michael Ward, Judge Common Pleas Court, Ross County, Ohio, Sitting by Assignment.

asking him to "clarify the nature of his representation," as Karen Stanley had advised that Kastner and Fitrakis were her attorneys and Attorney Kastner had further advised he "would not be appearing in Ross County for any proceedings related to this matter * * * due to the biased nature of the Court."

{¶9} On June 21, 2017, both Citibank and Hine filed motions for summary judgment. On July 12, 2017, Attorney Darren L. Meade filed a notice of appearance of co-counsel on behalf of Ms. Hine.

{¶10} On August 1, 2017, the trial court issued decisions on the pending motions for summary judgment. The trial court found as a matter of law that Citibank had standing to bring its action. The trial court granted partial summary judgment to Citibank on the issue of standing and denied Hine's motion for summary judgment.

{¶11} On August 2, 2017, Attorney Paul N. Garinger filed a Notice of Appearance as co-counsel on behalf of Citibank. On August 2, 2017, Attorney Kastner filed a Motion to Withdraw as counsel. On August 3, 2017, Hine formally waived her appearance at the jury trial.

{¶12} The jury trial commenced on August 3, 2017. Steven Sabo, assistant vice-president of Citibank, testified he is a primary custodian of Citibank's business records. He reviews the business records and has

reviewed the records of Katherine Hine.  He testified Citibank maintains records from accountholders, merchants, and credit bureaus.  All information is stored electronically and Sabo has access to the computer system.

{¶13} Sabo identified Exhibit 1 as a true and accurate copy of a credit card agreement, dated 2010, existing between Citibank and Appellant.  The card agreement, a 16-page document, governs the use of the account.  Sabo testified the document would have been sent to Appellant on or about October 2010.  Sabo testified he had verified that Appellant received the card based on its code with a number that he cross-referenced to the actual card product based upon Citibank's electronic storage system.  Specifically, he testified:

> "Systemically, there's no record of ever turned down [*sic*]
> coming back, so I would have to say yes, every payment- -
> every billing statement was sent to Ms. Hine."

{¶14} Exhibit 2 was identified as a card agreement from 2004.  Sabo testified Exhibit 2 was kept in the regular practice of Citibank.  Exhibit 3 was identified as 367 pages of duplicated billing statements sent to Appellant on a monthly basis and created by Citibank in the ordinary course of its business.  Sabo testified he maintained these records in the course of his job duties.

{¶15} Exhibit 3, page 110, was a copy of a billing statement dated November 16, 2010. It was addressed to Appellant. It showed a previous balance of $49.00 and payment received of $49.00, bringing her account balance to zero. Sabo testified that Exhibit 3 demonstrated that Appellant used the credit card after she received the October 2010 card agreement (Exhibit 1).

{¶16} Exhibit 4 was identified as 90 pages of copies of payments that Citibank received throughout the years of the account. The exhibits showed copies of a payment coupon which Citibank would prepare as part of its monthly statement to be returned with the payment. The exhibit also showed copies of checks Citibank received as payment. These documents were also maintained in the ordinary course of business. Sabo explained he had actually observed the process of Citibank's receiving payment, making copies of checks, and electronic storage.

{¶17} Sabo testified the last statement Appellant received on December 17, 2014 reflected an account balance of $13,025.96. He also identified the last billing statement sent to Appellant dated October 16, 2015, which showed a total new balance of $15,013.83 and included interest.

{¶18} On cross-examination, Sabo admitted he does not have any personal experience with Sears' internal business practices. Sabo testified

that the Citibank account was branded with Sears on Citibank's own card.
He admitted the account was not originated by Citibank so he does not know
what the application looked like or what the interest rate was. The account
was acquired by Citibank. Citibank does not have the origination records.
To his knowledge, the account with Sears was opened in August 1994.

{¶19} Sabo testified that Citibank does not have any card agreement
or other record of Appellant's signing an agreement for a specified interest
rate or a specified rate of late fees. However, he further testified such an
agreement "does not exist within the credit card industry."

{¶20} After Citibank presented its evidence and rested, Hine moved
for a directed verdict pursuant to Civ.R. 50. The Court overruled the
motion. Hine elected not to present evidence and rested. Citibank
subsequently moved for a directed verdict. After considering the arguments
of counsel, the trial court sustained Citibank's motion.

{¶21} On September 8, 2017, Hine filed "Defendant's Notice RE Pro
Se Status & Discharge of Counsel." She explained she had discharged her
counsel and intended, for the time being, to represent herself. Underneath
the signature line, she listed the East Water Street Rear, Chillicothe address.
On the same date, Hine filed Defendant's Response to Plaintiff's Sanctions,

Costs & Interest Motions.  The trial court scheduled a hearing on sanctions for October 10, 2017.

{¶22} The sanctions hearing took place on October 19, 2017.  Thomas Spetnagel, an experienced litigation attorney in Ross County, testified as an expert witness on behalf of Citibank.  In his direct testimony, along with explaining what materials and documents he had reviewed and the opinions to which he arrived, Spetnagel commented:

> "I then reviewed the court document, [*sic*] the court document, to my dismay, I found that there were 172 filings with the clerk's office in what appeared to be a rather straight forward collection case on a charge account, over 150 of them were filed by counsel in the case alone. * * * In the words of one person, a discovery nightmare, * * *.  There's nothing novel about the underlying case and if I were given this timesheet for a case that didn't go off track and wasn't a train wreck, I would have been unwilling to come into the courtroom. * * * I don't think it's the novelty of the case that's driven anything that comes into this—involving this case."

{¶23} The trial court discussed the pleadings with counsel, specifically noting problems with discovery Hine did not answer, objections she did not fully explain, the conflicting addresses Hine gave and the attempt to depose her, concluding: "There was a lot of time wasted, a lot of argument wasted on getting the defendant's deposition scheduled. * * * That didn't happen because of the defendant's failure to cooperate."  The trial court found as follows:

"All of the problems, all of the discovery issues that were contested and were big problems in the case which warranted a lot of time * * *. The court finds that based upon the defendant and defense counsels, except Mr. Meade, action in this case that the plaintiff is entitled to sanctions as a result of the plaintiffs proceeding with the trial which was made necessary by the actions of the defendant. The defendant didn't appear for trial by the way."

{¶24} On November 15, 2017, the trial court granted Citibank's

motion in part.

{¶25} On December 15, 2017, Katherine Hine and David Kastner

jointly appealed the interlocutory entries and final entry of the court. Where

pertinent, additional facts will be set forth below.

ASSIGNMENTS OF ERROR

"I. THE TRIAL JUDGE'S GRANT OF PARTIAL SUMMARY JUDGMENT AND SUBSEQUENT DIRECTED VERDICT TO APPELLEE PLAINTIFF CBNA ERRONEOUSLY IGNORED OHIO REV. CODE SEC. 1343.03(A) AND APPLICABLE CASE LAW ESTABLISHING THAT INTEREST RATES CLAIMED IN BILLING STATEMENTS DO NOT CREATE CONTRACTS FOR SUCH INTEREST ABSENT A SIGNED WRITTEN CONTRACT SPECIFYING THAT INTEREST RATE.

II. THE TRIAL COURT ERRED IN FINDING AT SUMMARY JUDGMENT THAT CBNA HAD ACQUIRED ANY CONTRACT RIGHTS FROM SEARS' AND BY THEN AWARDING A DIRECTED VERDICT TO CBNA THAT INCLUDED $6,960.14 IN USURIOUS INTEREST WITHIN THE $15,013.83 AWARD, PLUS ADDITIONAL PRE-AND POST-JUDGMENT INTEREST AT 25.24% ON THE FULL $15,013.83 IN THE ABSENCE OF ANY COMPETENT EVIDENCE TRACING CBNA'S CLAIMED RIGHT TO

CHARGE USURIOUS INTEREST TO A PREDECESSOR WHO HAD THAT RIGHT AND IN THE ABSENCE OF A WRITTEN CONTRACT WITH HINE TO PAY SUCH INTEREST TO CBNA OR ANY PROVEN PREDECESSOR OF CBNA.

III. THE TRIAL COURT ERRED BY IMPOSING $18,150 IN SANCTIONS UPON APPELLANTS ALLEGEDLY PURSUANT TO CIVIL RULE 11 AND OHIO REV. CODE SEC. 2323.51, FOR APPELLEE'S CLAIMED TRIAL PREPARATION ATTORNEY FEES IN THE COMPLETE ABSENCE OF ANY EVIDENCE THAT EITHER APPELLANT COMMITTED ANY SANCTIONABLE ACT.

IV. THE TRIAL COURT ERRED IN IMPOSING $18,150 IN SANCTIONS OF WHICH $6700 IN ATTORNEY FEES WERE AWARDED TO ATTORNEY GARRINGER PURELY BECAUSE LEAD ATTORNEY FOLLAND LACKED JURY TRIAL EXPERIENCE.

V.  THE TRIAL JUDGE ERRED BY IMPOSING $4,266.20 IN ADDITIONAL SANCTIONS FOR FAILED EFFEORTS TO TAKE HINE'S DEPOSITION DESPITE THE ABSENCE OF PROOF OF SANCTIONABLE MISCONDUCT, IN DEROGATION OF HIS OWN FINDINGS LIMITING THE NUMBER OF ATTORNEYS TO BE COMPENSATED, AND DUE TO MATHEMATICAL ERRORS IN CALCULATING ATTORNEY FEES.

VI. APPELLANTS WERE DEPRIVED OF DUE PROCESS OF LAW BY THE CUMULATIVE EFFECT OF TRIAL COURT RULINGS THAT WERE CONSISTENTLY AND ERRONEOUSLY ADVERSE TO APPELLANTS IN VIOLATION OF THEIR RIGHTS TO AN IMPARTIAL TRIBUNAL AS EVIDENCED BY THE VARIOUS GROUNDLESS DISCOVERY AND SANCTIONS RULINGS OF BOTH TRIAL JUDGES IN WHICH THEY TOOK ADVANTAGE OF THE INABILITY OF BOTH APPELLANTS TO APPEAR IN PERSON."

ASSIGNMENT OF ERROR TWO

{¶26} For ease of analysis, we begin with Hine's second assignment of error.  Hine asserts that Citibank failed to establish standing to bring suit because there is no evidence that Citibank acquired, through merger or otherwise, a transfer of Hine's original Sears credit card and any associated contract rights.  Therefore, the trial court erred in granting partial summary judgment and later, a directed verdict in favor of Appellee.  For the reasons which follow, we disagree.

STANDARD OF REVIEW

{¶27} Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56. *Vacha v. N. Ridgeville,* 136 Ohio St.3d 199, 2013–Ohio–3020, 992 N.E.2d 1126, ¶ 19.  Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made and (3) the moving party is entitled to judgment as a matter of law. *Capital One Bank (USA) N.A. v. Rose*, 4th Dist. Ross No. 18CA3628, 2018-Ohio-2209, at ¶ 23; Civ.R. 56; *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011–Ohio–2266, 950 N.E.2d 157, ¶ 24; *Chase Home Finance, LLC v. Dunlap,* 4th Dist. Ross No. 13CA3409, 2014–Ohio–3484,

¶ 26.

{¶28} The moving party has the initial burden of informing the trial court of the basis for the motion by pointing to summary judgment evidence and identifying parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims. *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *Chase Home Finance* at ¶ 27. Once the moving party meets this initial burden, the non-moving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue remaining for trial. *Dresher* at 293, 75 Ohio St.3d 280, 662 N.E.2d 264. *See also Rose, supra*, at 24.

## LEGAL ANALYSIS

{¶29} "Because an action on an account is founded upon contract, the plaintiff must prove the necessary elements of a contract action, and, in addition, must prove that the contract involves a transaction that usually forms the subject of a book account." *Chase Bank, USA v. Curren,* 191 Ohio App.3d 507, 2010-Ohio-6596, 946 N.E.2d 810, (4th Dist.) at ¶14, quoting *Crown Asset Mgt., L.L.C. v. Gaul,* 4th Dist. Washington No. 08CA30, 2009-Ohio-2167, at ¶ 10, quoting *Asset Acceptance Corp. v. Proctor,* 156 Ohio App.3d 60, 2004-Ohio-623, 804 N.E.2d 975, at ¶ 12. For a creditor to adequately plead and prove an account, the account "must show the name of

the party charged." *Id.* at ¶ 12, quoting *Brown v. Columbus Stamping & Mfg. Co.*, 9 Ohio App.2d 123, 126, 223 N.E.2d 373 (1967).  Moreover, the account must "begin[ ] with a balance, preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum.  Following the balance, the item or items, dated and identifiable by number or otherwise, representing charges, or debits, and credits, should appear.  Summarization is necessary showing a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due." *Id.*

1. Hine's argument on appeal.

**{¶30}** In this case, Hine filed a motion for summary judgment arguing that Citibank had not proved ownership of the account in question and therefore had no standing to sue.  Citibank also filed a motion for summary judgment with documentation purporting to show that Appellant's Sears credit card account was acquired by Citibank (South Dakota) N.A., which eventually merged with Citibank, N.A.  Citibank also pointed out that that there was no question that Hine had used the Citibank, N.A. account.

**{¶31}** "It is fundamental that a party commencing litigation must have standing to sue in order to present a justiciable controversy and invoke the jurisdiction of the * * * court." *Absolute Resolutions X, LLC, v. Ratta,* 9th

Dist. Summit No. 28414, 2018-Ohio-3661, at ¶ 15, quoting *Citibank N.A. v. Rowe*, 9th Dist. Lorain No. 12CA010217, 2013-Ohio-523, ¶ 8, quoting *Fed. Home Loan Mtge. Corp v. Schwartzwald,* 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 41. "In an action on an account, when an assignee is attempting to collect on an account in filing a complaint, the assignee must 'allege and prove the assignment.' " *Natl. Check Bur., Inc. v. Ruth,* 9th Dist. Summit No. 24241, 2009-Ohio-4171, ¶ 6, quoting *Worldwide Asset Purchasing, L.L.C. v. Sandoval,* 5th Dist. Stark No. 2007-CA-00159, 2008-Ohio-6343, ¶ 26, quoting *Zwick & Zwick v. Suburban Constr. Co.,* 103 Ohio App. 83, 84 (8th Dist.1956). "In other words, in order to prevail, the assignee must prove that they are the real party in interest for purposes of bringing the action. An assignee cannot prevail on the claims assigned by another holder without proving the existence of a valid assignment agreement." *Id.* quoting *Sandoval* at ¶ 26. Failure to prove the assignment of an account leaves a hole in the chain of title and bars an alleged assignee from recovering on the account. *Id.*

{¶32} The trial court's entry granting summary judgment stated as follows:

> "* * * The documentation provides that Sears National Bank
> Credit Card accounts were acquired by Citibank, N.A. in 2003.
> * * * Defendant's actual signed credit card agreement was not
> presented as evidence in this case. However, credit card

agreements are contracts whereby the issuance and use of a credit card creates a legally binding agreement (internal citations omitted.) There is no dispute that Sears issued a credit card to Defendant and she used the card to make purchases. * * * Accordingly, the Court finds as a matter of law that Plaintiff has standing to bring this action. * * *"

**{¶33}** Citibank's motion for summary judgment was supported by the affidavit of Steven Sabo, Citibank's long-time employee, who averred he was making the affidavit based on personal knowledge and review of business records described herein. Sabo's affidavit is set forth in pertinent part as follows:

1. * * * Citibank is a national bank, chartered under the laws of the United States, and maintains its office in Sioux Falls, South Dakota.

2. On or about August 1, 1994, a Sears Mastercard branded credit card account was opened in Defendant's name, for Defendant's use * * * with the current account ending in 4036, which is the credit card account at issue in this case (the Account).

3. Citibank USA, N.A. acquired Sears branded credit card accounts, including the Account, in November 2003. Citibank USA, N.A. merged into Citibank (South Dakota), N.A., which later merged into Citibank, N.A. The Account acquisition and consummated mergers are reflected in true and accurate copies of documents marked with Bates stamp numbers CIT-555, 571, 502-540 and attached hereto as Exhibit A.

4. Citibank is the owner of the Account and is owed the account balance.

5. Defendant was notified of Citibank's acquisition of the Account. In March 2004, Defendant was provided with a card agreement governing the Account, a true and accurate copy of which is marked with Bates stamp numbers CIT-524-527 (the 2004 Card Agreement). In November 2010, Defendant was sent updated terms and conditions

governing the Account, a true and accurate copy of which is marked with Bates stamp numbers CITT-480 to CIT-495 (the 2010 Card Agreement). The 2004 Card Agreement and the 2010 Card Agreement (collectively the Card Agreement) is attached as Exhibit B."

{¶34} Hine contends that the only evidence in support of the claim that Citibank, N.A. acquired her Sears account in 2003 is a 2003 CRA Decision #117 from the Office of the Comptroller of the Currency (OCC) granting approval of the proposed acquisition and merger. Hine cites the OCC document as being the identical document proffered in other recent Ohio litigation involving Sears credit card accounts allegedly acquired by Citibank. Hine directs our attention to the decision in *Citibank N.A. v. Rowe,* 2013-Ohio-523**,** a Ninth District case in which the appellate court, upon examination of the identical document, concluded:

> "* * * CRA Decision # 117, dated November 2003, indicates the OCC's approval of Citibank USA, N.A.'s application "to purchase substantially all of the assets of Sears National Bank, [N.A.]" However, the letter states that, upon receipt of the required documents from Citibank USA, N.A., the OCC would "issue a letter certifying consummation of the transaction." The letter further states that "[i]f the asset purchase is not consummated within one year from the approval date, the approval shall automatically terminate, unless the OCC grants an extension of the time period." Thus, the OCC letter does not confirm that Citibank USA, N.A. purchased the assets of Sears National Bank, N.A., it merely confirms that the OCC granted approval for such a transaction to take place."

{¶35} We agree with Hine's argument, in part, and disagree with the trial court's finding that the documentation demonstrates Citibank's actual acquisition of Hine's Sears account. Our examination of the "Merger Documents" attached to Sabo's affidavit as Exhibit A, reveals that part of Exhibit A is CRA Decision #117, November 2003. This document reflects that "on October 16, 2003, the OCC approved the application of Citibank USA, National Association, Sioux Falls, South Dakota, to purchase substantially all of the assets of Sears National Bank, National Association, Tempe, Arizona."[5] The conclusion of the letter reiterates that the application was approved.

{¶36} Our review of the record reflects that the singular subject of CRA decision #117 is the application of Citibank USA National Association *to acquire* Sears National Bank assets. The CRA decision references *only* OCC Control Nr. 2003-ML-02-008. According to the Office of the Comptroller, United States Department of the Treasury website, each *application* (emphasis added) or notice is assigned an OCC control number that is a unique identifier. When requesting information or discussing the application or notice with the OCC, it is helpful to reference the control

---

[5] This document further provides in its fourth paragraph that the application was prompted by Citibank USA's planned acquisition of all private label and general purpose credit card accounts held by SEARS NB.

number. *See* https://www.occ.gov/topics/licensing/corporate-activities-weekly-bulletin/index-weekly-bulletin.html.

{¶37} The next document within Exhibit A merger documents is a letter from the OCC, captioned "Corporate Decision #2006-08," with a date of August 3, 2006.  The beginning of the letter indicates the subject is the "[a]pplications by Citibank, N.A., Citibank (South Dakota), N.A. and certain affiliates to internally reorganize and consolidate certain banking and credit card operations."  This section also lists several Application Control Numbers, however, the above Control No. 2003-ML-02-008, as referenced in CRA decision #117 above, is not included.  This letter contains a list of applications approved and in Paragraph 11, our attention is called to the "Application to merge Citibank USA, National Association, 701 East 60th Avenue, Sioux Falls, South Dakota (a national credit card bank not limited to CEBA activities) and Citibank (Nevada) National Association ("CBNV") with and into Citibank (South Dakota), N.A. (2006-ML-02-0011)." Nowhere in the August 3, 2006 letter is Control No. 2003-ML-02-008 or Sears identified or referenced.

{¶38} While as in the *Rowe* decision cited above, the above documents demonstrate that Citibank *intended* to acquire the credit card accounts of Sears, and that Citibank's application was approved, there is no

further documentation to prove that the acquisition *actually* took place. Corporate Decision #2006-08, upon close scrutiny, does not provide a link between Control No. 2003-ML-02-008, Citibank's application to acquire the Sears assets, and *actual* acquisition. Exhibit A also attaches a document captioned "Certificate of National Bank Merger" which indicates that on July 1, 2011, Citibank (South Dakota) National Association into Citibank National Association. The above documents demonstrate that the application to merge Citibank USA, National Association and Citibank (Nevada) National Association with Citibank (South Dakota) N.A. was approved. However, as in *Rowe,* there is no further documentation to demonstrate that Sears was in actuality a part of Citibank, N.A. at the time of the 2011 merger. Therefore, we would agree with Hine that Citibank failed to prove acquisition of her Sears credit card account.

{¶39} However, while Citibank has failed to prove it acquired Hine's Sears credit card account, we conclude that Citibank, N.A. does have standing to bring the suit against Hine by virtue of its own agreement with Hine in 2010. We next examine Exhibit B, "The Card Agreements." The first document attached as Exhibit B is a 2004 card agreement identifies Citibank USA, N.A. as the issuer of the account. The second paragraph of

the card agreement mentions Sears, Sears Roebuck and Co., "Sears purchase," "Sears transaction" and "Sears entity."

{¶40} Also attached to Exhibit B is a 2010 card agreement identifying Citibank (South Dakota), N.A. as the issuer.  The body of the card agreement does not mention Sears but the bottom of each page of the agreement contains the words "Sears Mastercard."  In the first paragraph of the 2010 card agreement it states: "This card agreement is your contract with us.  It governs the use of your card and your account."  The third paragraph of the card agreement also provides:

> "You must use your account in accordance with this Agreement. * * * This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card."

{¶41} Hine also asserts that while her use of the credit card may be evidence of some sort of agreement, there is no evidence of the terms of the original Sears credit card.  We agree that evidence of the original terms of an agreement alleged to be between Sears and her is absent from the record.  However, it does appear that Citibank, N.A. and Hine entered an agreement in 2010.

{¶42} After Hine received the 2010 Card Agreement from Citibank, N.A., she subsequently used it to make charges that are the subject of this collection action.  "Credit card agreements are contracts whereby the

issuance and use of a credit card creates a legally binding agreement."

*Taylor v. First Resolution,* 148 Ohio St.3d 627, 2016-Ohio-3444, 72 N.E.3d

573, at ¶ 50, quoting *Bank One, Columbus, N.A. v. Palmer,* 63 Ohio App.3d

491, 493, 579 N.E.2d 284 (10th Dist.1989). *Dudek,* 702 F.Supp.2d at 839;

*Citibank N.A. v. Hyslop,* 10th Dist. Franklin No. 12AP–885, 2014-Ohio-844,

at ¶ 16–17; *Discover Bank v. Heinz,* 10th Dist. Franklin No. 08AP–1001,

2009-Ohio-2850, at ¶ 17; *Discover Bank v. Poling,* 10th Dist. Franklin No.

04AP–1117, 2005-Ohio-1543, at ¶ 18.

{¶43} Based on evidence of Hine's use of the Citibank, N.A. credit

card, we agree with the trial court's ruling that Citibank did have standing to

pursue its action against Hine.  The Card Agreement issued in 2010

identifies Citibank, N.A. as the issuer.  The agreement explicitly states in the

first paragraph that "[t]his is your contract with us."  Further, the agreement

explicitly advises that Hine must close the account in 30 days or the contract

will be binding upon her.  The Account Statements attached as "Exhibit C,"

and the Account Information showing payments made, attached as "Exhibit

D," reflect activity on the account after October 2010 when the account had

actually achieved a zero balance.

{¶44} Under this assignment of error, Hine has also argued that

Citibank, N.A.'s witness Sabo, both in motion practice and at trial, was not competent to testify. Civ.R. 56(E) states: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." "Personal knowledge" is " '[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.' " *Curren, supra,* at ¶ 17, quoting *Bonacorsi v. Wheeling & Lake Erie Ry. Co.,* 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, at ¶ 26, quoting Black's Law Dictionary (7th Ed.Rev.1999) 875. It is " 'knowledge of factual truth which does not depend on outside information or hearsay.' " *Curren, supra,* quoting *Residential Funding Co., L.L.C. v. Thorne,* 6th Dist. Lucas No. L–09–1324, 2010-Ohio-4271, at ¶ 64, quoting *Modon v. Cleveland* (Dec. 22, 1999), 9th Dist. Medina No. 2945–M, 1999 WL 1260318, at *2. Furthermore, "[f]or evidentiary material attached to a summary judgment motion to be considered, the evidence must be admissible at trial." *Curren, supra,* at ¶ 16, quoting Civ.R. 56(E) and *Pennisten v. Noel,* 4th Dist. Pike No. 01CA669, 2002 WL 254021, (Feb. 8, 2002), at *2. We review the

court's rulings on the admissibility of evidence for an abuse of discretion.

*Lawson v. Y.D. Song, M.D., Inc.,* 4th Dist. Scioto No. 97 CA 2480, 1997 WL

596293, (Sept. 23, 1997), at *3. *See State v. Sage,* 31 Ohio St.3d 173, 510

N.E.2d 343, (1987), at paragraph two of the syllabus.  The term "abuse of

discretion" implies that the court's attitude is unreasonable, arbitrary, or

unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144

(1980).

{¶45} Here, the 2010 Card Agreement was in effect, according to the

date listed on the document, on October 4, 2010.  Sabo's affidavit further

provides:

6. Citibank's records regarding the Account contain the name and address of the Defendant, the Account number, charges made on the Account, finance charges, fees, and other charges to the Account, payments and credits applied to the Account, and any outstanding account balance owed by the Defendant, all of which records are collectively referred to as "Defendant's Account Information."

7. Citibank maintains records, including Defendant's Account information, which are kept in the ordinary course of its business, which are made at or near the time of each event recorded by someone with personal knowledge of the events, or from information transmitted by someone with personal knowledge of each event, and a business duty to set forth such information in the records.

8. According to the Defendant's Account Information and Citibank records, Defendant did use the Account to charge amounts to the Account and to acquired goods and/or services.  Plaintiff mailed transaction detail to Defendant every month that there was activity on the Account (the Account statements). The Account Statements were sent to an address provided by the Defendant.

9. The Account Statements reflect the charges and payments on the Account. True and accurate copies of the available Account Statements are marked with Bates stamp numbers of CIT-001 to CIT-367 and attached as Exhibit C.

10. The Defendant's Account Information also includes information regarding payments on the Account. True and accurate copies of available payment copies made to the Account are marked with Bates stamp numbers of CIT-386 to CIT-479 and are attached as Exhibit D.

{¶46} Nothing in evidence convinces us that Sabo, a vice-president and 26-year employee of Citibank, was not competent to testify regarding Hine's Citibank, N.A. credit card account originating in 2010. Nor does it appear that the trial court abused its discretion in admitting Sabo's testimony and supporting documentation into evidence. Sabo testified the account statements were mailed to addresses provided by Hine and the account information reflects activity in the way of both charges and payments. We find there is no evidentiary dispute that Hine used the Citibank, N.A. credit card. Therefore, Citibank, N.A. and Hine entered into an agreement and Citibank, N.A. had standing to bring the suit against her.

   2. Sua Sponte consideration of the account statements of the account in question.

{¶47} Hine has consistently maintained that Citibank did not prove ownership of her Sears account. The Supreme Court of Ohio has also indicated that where a legal issue is not argued, but is nevertheless implicit in another issue that has been presented by an appeal, it may reach that

unargued issue. *In re C.W.* at 14. *See Belvedere Condominium Unit Owners'*

*Assn. v. R .E. Roark Cos. Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075

(1993).  "When an issue of law that was not argued below is implicit in

another issue that was argued and is presented by an appeal, we may

consider and resolve that implicit issue.  To put it another way, if we must

resolve a legal issue that was not raised below in order to reach a legal issue

that was raised, we will do so." *Id.*

{¶48} Steve Sabo testified on cross-examination that Hine's account

was a Citibank account "branded with Sears on its card."  On redirect, Sabo

explained that Citibank issues different credit cards under different brands.

He testified:

> "For example, American Airlines.  American Air doesn't issue
> credit cards.  They go through Citibank just to have their name
> on the plate.  Same thing with Sears. * * * There's fraternities,
> sororities, colleges, there's all sorts of different branding out
> there."

{¶49} Voluminous copies of account statements were submitted with

Citibank's motion for summary judgment.  Additional voluminous copies

were submitted at trial as Exhibit 3.  This discussion will focus on the

account statements submitted at trial.  On an Account Statement with a

Payment Due Date of December 13, 2010, and after the issuance of the

October 10, 2010 Card Member Agreement, the Account Statement reflects

the last four digits of an account ending in "9252." However, in a later

Account Statement with Payment Due Date of December 13, 2012, the last

four digits of an account ending in "4036" are reflected on the statement. A

discrepancy as to account numbers was at issue in *S.M.S. Financial 30,*

*L.L.C., v. Frederick D. Harris, M.D., Inc.,* 8th Dist. Cuyahoga No. 105710,

2018-Ohio-2064. The discrepancy was significant because the appellants

had multiple lines of credit with National City Bank, whose assets were

eventually acquired by Appellee S.M.S. The appellate court agreed with the

trial court that the account in question was the correct debt.

{¶50} The appellate court observed at paragraphs 46-48:

"Had appellants believed that SMS was collecting on the wrong
debt, they could have provided evidence demonstrating that
additional accounts existed with National City Bank. * * *

A review of the exhibits submitted at trial reveals that while the
handwritten numbers and the account number on the PNC bank
statements and Schedule of Loans do not match, what does
match and remains consistent and constant is the UCC
financing statement file number assigned by the Ohio secretary
of state. This evidence demonstrates that SMS is collecting on
the correct debt. * * *

In light of evidence that the LOC and UCC filing bears this
faxed date, contains a secretary of state file number that
remains constant throughout all the continuations filed, and the
continuations bear the account number that SMS is attempting
to collect on, the trial court's decision was not against the
manifest weight of the evidence."

{¶51} In this case, the Account Statements demonstrate that Sears

Mastercard was at the top of each statement and toward the bottom of the statement was a notation "This Account is issued by Citibank (South Dakota), N.A." The November 2010 Account Statement reflects this.

{¶52} On the August 13, 2011 Account Statement, the following is noted underneath "Cardmember News":

> "IMPORTANT NOTICE ABOUT YOUR ACCOUNT.
> Effective July 1, 2011, Citibank (South Dakota), N.A., is merged into Citibank, N.A."

{¶53} The September 13, 2011 Account Statement continues to reflect the 9252 account number but instead in the middle of the statement states: "This Account is issued by Citibank, N.A."

{¶54} In the exhibits presented at trial, there is a gap in the account statements between the May 13, 2012 statements and the December 2012 statements. The May 2012 statement still carried the 9252 number but the December 2012 statement reflects the 4036 number.

{¶55} Then, the April 13, 2015 Account Statement reflects the 4036 account number and that it is issued by Citibank, N.A. What remains consistent throughout the account statements is the fact that Sears MasterCard is printed at the top of each account statement, and that the payment information reflects that Karen Stanley (Hine's personal friend,

spiritual advisor, and paralegal) continued to pay on the Sears-branded

Citibank account "4036" until after March 2015.

{¶56} In Defendant's Second Set of Responses to Plaintiff's First &

Second Set of Interrogatories, Requests for Production of Documents &

Requests for Admission, Hine gave these responses:

> Request for Admissions No. 1: Admit that you opened an
> account with Sears for an extension of credit, now owned by
> Citibank.
>
> "* * * It appears that I had several accounts with Sears' Credit
> Card Services, including the one that is the subject of this
> litigation. But I deny that the account subject to this lawsuit is
> 'now owned by Citibank.'"
>
> Request for Admissions No. 4: Admit that you defaulted under
> the terms and conditions of the extension of credit by failing to
> pay the minimum amount due on time, in the amount stated in
> the Card Statement.
>
> "I admit that I did not authorize any payments to Sears after
> March 2015."
>
> In Request for Production No. 7: Produce all documents
> relating to and/or referencing the account.
>
> "Other than documents Plaintiff has produced, I have no such
> documents other than the attached checkbook register summary
> of checks for payments to Sears written by Karen Stanley and
> summarized by her for the period December 2012 through
> March 2015."

{¶57} As will be discussed more fully below, a March 30, 2015 email

between Hine and Karen Stanley demonstrates that Hine acknowledged owing on the Sears account and directed Karen Stanley to stop making payments on it. Despite the conflict in the actual account numbers, Hine has not provided any evidence in the record that Citibank has attempted to collect on the wrong account. Hine admits she once had several accounts with Sears, including the one at issue in this case. Although she denied Citibank's ownership of the account, as set forth above, we have found that Hine and Citibank had entered into an agreement, based on the October 2010 Card Member Agreement. The payment information in the record shows payment until after March 2015. Hine's direction to Karen Stanley demonstrates payments ceased on the account which Citibank seeks to collect after March 2015. Based on this evidence, we sua sponte find despite the conflicting account numbers, Citibank is seeking to collect on the correct "Sears branded" credit card account.

{¶58} Based on the above, we find no merit to Hine's argument that Citibank, N.A. had no standing to bring suit against her. Accordingly, we overrule the second assignment of error.

### ASSIGNMENT OF ERROR ONE

{¶59} At trial, Citibank requested a directed verdict based on the

amount of charges incurred by Hine, as well as the amount of interest accrued, in the amount of $15,013.83. On appeal, Hine argues that Citibank did not prove that the right to charge interest exceeding the statutory amount. For the reasons which follow, we agree with Hine.

## STANDARD OF REVIEW

{¶60} Under Civ.R. 50(A)(4), the court should grant a motion for directed verdict if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." "A motion for directed verdict does not present a question of fact or raise factual issues, although the trial court is required to review and consider the evidence." *Berry v. Paint Valley Supply,* 4th Dist. Highland No. 16CA18, 2017-Ohio-4254, at ¶ 39, quoting *Mender v. Chauncey*, 2015-Ohio-4105, 41 N.E.3d 1289, ¶ 10 (4th Dist.), citing *Ruta v. Breckinridge–Remy Co.,* 69 Ohio St.2d 66, 430 N.E.2d 935 (1982), paragraph one of the syllabus. A motion for directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of witnesses. *Mender* at ¶ 10, citing *Ruta,* at 68–69. "Because a motion for directed verdict presents a question of law, appellate review of a trial court's decision on the motion is

de novo." *Bennett v. Admr., Ohio Bur. of Workers' Comp.,* 134 Ohio St.3d

329, 2012–Ohio–5639, 982 N.E.2d 666, ¶ 14.

## LEGAL ANALYSIS

{¶61} In support of Hine's argument that Citibank was not entitled to

the amount of interest requested, she directs us to R.C. 1343.03(A).  R.C.

1343.03(A) provides in pertinent part:

> "In cases other than those provided for in sections 1343.01 and
> 1343.02 of the Revised Code, when money becomes due and
> payable * * * upon any book account, * * *, the creditor is
> entitled to interest at the rate per annum determined pursuant to
> section 5703.47 of the Revised Code, unless a written contract
> provides a different rate of interest in relation to the money that
> becomes due and payable, in which case the creditor is entitled
> to interest at the rate provided in that contract."[6]

{¶62} For entitlement to a rate different than the statutory rate of

interest to be charged, R.C. 1343.03(A) requires that: (1) there must be a

written contract between the parties, and (2) the contract must provide a rate

of interest with respect to money that becomes due and payable. *Yager*

*Materials, Inc. v. Marietta Indus. Ent., Inc.,* 116 Ohio App.3d 233, 236, 687

N.E.2d 505 (4th Dist. 1996); *P. & W.F., Inc. v. C.S.U. Pizza, Inc.*, 91 Ohio

App.3d 724, 729, 633 N.E.2d 606, 609 (8th Dist.1993); *Hobart Bros. Co. v.*

---

[6] R.C. 5703.47 (B) provides in pertinent part: "On the fifteenth day of October of each year, the tax commissioner shall determine the federal short-term rate. For purposes of any section of the Revised Code requiring interest to be computed at the rate per annum required by this section, the rate determined by the commissioner under this section, rounded to the nearest whole number per cent, plus three per cent, shall be the interest rate per annum used in making the computation for interest that accrues during the following calendar year."

*Welding Supply Serv., Inc.*, 21 Ohio App.3d 142, 144, 486 N.E.2d 1229, 1231-1232 (10th Dist.1985); *see also Sys. Data, Inc. v. Visi Trak Corp.*, 72 Ohio Misc.2d 8, 10-11, 655 N.E.2d 287, 288-289 (1995). Thus, R.C. 1343.03(A) requires a written contract before a creditor may be entitled to interest rates higher than the 4% indicated in R.C. 5703.45.[7]

{¶63} Hine argues that Citibank is unable to produce a written, signed contract evidencing the debtor's assent to a contractual rate of interest. We agree. We have previously determined that Citibank, N.A. held a contractual relationship with Hine based on the October 2010 Card Agreement. After the Citibank, N.A. credit card was issued, instead of closing the account within 30 days, Hine continued to use the card and incurred charges. Citibank has directed our attention to these provisions in the 2010 Card Agreement:

> **Changes to This Agreement**
>
> We may change the rates, fees, and terms of this Agreement from time to time as permitted by law. The changes may add, replace, or remove provisions of this Agreement. We will give you advance written notice of the changes and a right to opt out to the extent required by law.

---

[7] R.C. 1343.03(A) provides in pertinent part: "In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable * * * upon any book account, * * *, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

**{¶64}** Citibank further points to the following language in the 2004

Card Agreement, "Variable Annual Percentage Rate for Purchases and Cash

Access":

> "Your annual percentage rates may also vary if you default under and Card Agreement that you have with us because you fail to make a payment to us or any other creditor when due, you exceed your credit line, or you make a payment to us that is not honored.  In such circumstances, we may increase y our annual percentage rates (including any promotional rates) on all balances to a variable default rate of 23.99% plus the applicable U.S Prime rate."

**{¶65}** Finally, Citibank cites Sabo's trial testimony as follows:

A:     This is a Citibank Account that's branded with Sears on its card.

* * *

Q:     Okay, Now as we sit here today, you're not asking for any charges or amounts that Ms. Hine may have owed to Sears, are you?

A:     No.

Q:     You're only asking for amounts owed to Citi, am I correct?

A:     Correct.

* * *

Q.     And does this statement disclose an interest rate?

A.     Yes, it does.

Q.     And what is that rate?

A.     25.24%

Q.     And again, that's the same rate that you've testified is on every one of these statements.

A.     That is correct, yes.

{¶66} The language of the 2004 Card Agreement is not pertinent. The 2010 Card Member Agreement does not reflect an interest rate. And, Sabo's testimony that the Citibank Account Statements revealed a 25.24% interest rate, and therefore controlled the numerical calculations, is not in accordance with the law set forth above in *Yager. Yager* further observed that the Tenth District Court of Appeals in *Hobart Bros. Co., supra,* at 144, 486 N.E.2d at 1231-1232, also ruled that "a statement on an invoice or bill to which the other party has not assented does not meet the requirement of R.C. 1343.03(A) as to the existence of a written contract between the parties." *Id.*[8] In *Yager, supra,* at 236, we held:

> "The statements on appellee's invoices to the effect that an eighteen percent service charge would be assessed on past due balances was insufficient to establish a written contract for that rate pursuant to R.C. 1343.03(A). There is nothing in the record to indicate that appellant ever assented to that provision. Moreover, as the parties stipulated, there was no written agreement by appellant to pay any finance charge at all. Appellee is therefore relegated to the ten percent per annum rate

---

[8] This principle has subsequently been adopted and applied by other courts as well. *See, e.g., Olander & Brophy v. Northeastern Pools* (Jan. 7, 1991), Stark App. No. CA-8219, unreported, 1991 WL 6268; *Kut Kwick Corp. v. N. Dixie Parts & Serv., Inc.* (Apr. 21, 1988), Montgomery App. No. CA 10678, unreported, 1988 WL 38130.

specified in R.C. 1343.03(A) rather than the eighteen percent per annum rate which appears to have been applied below."

{¶67} *Yager* involved a suit on an account for limestone which Yager had sold and supplied to the appellant's place of business. Yager sued to recover sums allegedly owing on open account, and the trial court entered judgment in favor of Yager in the amount claimed. On appeal, we held that provision in Yager's invoices, specifying an interest at rate of 18 percent per annum was not sufficient to constitute a "written contract" between parties for payment of interest at this 18 percent rate.

{¶68} The *Yager* analysis was applied in *Capital One v. Heidebrink*, 6th Dist. Ottawa No. OT08049, 2009-Ohio-2931, an action to collect on a credit card account. Capital One argued that it proved a contract by, amongst other evidence, mutual assent to the terms and conditions through use of the credit card." However, the appellate court pointed out Capital One did not submit any evidence of the "terms and conditions" or "IMPORTANT DISCLOSURES" to which Heidebrink allegedly assented, or any of the terms which were "disclosed" to Heidebrink when the account was opened. *Id.* at 45.

{¶69} Capital One also emphasized its "customer agreement" as evidence of a contract. However, the appellate court reiterated that the customer agreement did not state what the fees would be for over limit

occurrences or late payments.  Instead, each relevant section of the

"customer agreement" referred to fees "disclosed" or "told to" the account

holder when the account was opened.  "Capital One has submitted no

evidence of what specific fees were disclosed to Heidebrink." *Id.* at 46.

{¶70} The *Heidebrink* court observed that "[M]onthly statements of

credit card accounts do not demonstrate the underlying contract or agreed-

upon terms."  The appellate court held at ¶ 43:

> "Capital One has not submitted any evidence of the interest rate
> to which Heidebrink assented. Because Capital One did not
> submit proof that its claimed interest rate of 20.40 percent was
> a term of an agreed-upon contract, the trial court did not abuse
> its discretion in imposing the statutory rate pursuant to R.C.
> 1343.03(A). The same rationale and result applies to Capital
> One's claimed over limit fees and late fees. Capital One has not
> shown specific fees which were terms of a contract between it
> and Heidebrink. The trial court did not abuse its discretion in
> subtracting these fees from the amount claimed."

{¶71} In this case, we have found that the contractual agreement

between Citibank, N.A. and Hine arose as a result of Hine's use of her credit

card after being provided the 2010 Card Agreement.  The 2010 Card

Agreement with Citibank, N.A. does not contain any section which sets forth

the interest rate applicable to the account.  Sabo testified as to the interest

rate set forth on the monthly account statements sent to Appellant.

However, under *Yager,* monthly statements are not sufficient evidence of a

written contract.  As a result, in the absence of a written contract, Citibank is only entitled to interest at the rate provided by statute.

{¶72} For actions seeking money due on an account, the Supreme Court of Ohio has declared that the creditor may only seek interest on the account at the rate provided by statute, when the creditor is unable to produce a written, signed contract evidencing the debtor's assent to a contractual rate of interest. *Discover Bank v. Schwartz,* 2016-Ohio-2751, 51 N.E.3d 694 (2nd Dist.), at ¶ 22. *Minster Farmers Coop. Exchange Co. v. Meyer,* 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, ¶ 29 (2008).

{¶73} Appellee has argued that South Dakota law governs the issues herein.  The 2010 Card Agreement sets forth as follows:

> **Governing Law and Enforcing our Rights**
>
> **Governing law.**  Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement.

{74} In contractual choice-of-law situations, the law of the chosen state is applied to resolve the substantive issues in the case, while the law of the forum state will govern procedural matters." *Discover Bank v. Schwartz,* 2016-Ohio-2751, 51 N.E.3d 694 (2nd Dist.), quoting *Citibank (S. Dakota), N.A. v. Perz,* 191 Ohio App.3d 575, 2010-Ohio-5890, 947 N.E.2d 191, ¶ 28 (6th Dist.), citing *Burns v. Prudential Secs., Inc.,* 167 Ohio App.3d 809,

2006-Ohio-3550, 857 N.E.2d 621, ¶ 16, fn. 5 (3rd Dist.); *White v. Crown Equip. Corp.,* 160 Ohio App.3d 503, 2005-Ohio-1785, 827 N.E.2d 859, ¶ 13 (3rd Dist.). In *Discover Bank,* the appellate court noted that subsequent to the *Minster Farmers* decision, the Third and Sixth Appellate Districts have applied the holding of the Supreme Court to credit card collection cases, and have concluded that when the creditor's documents fail to demonstrate the parties' assent to a specific interest rate and to the imposition of late fees or over-the-limit fees, then a genuine issue of fact remains as to the balance owed on the account. *Retail Recovery Serv. of NJ v. Conley,* 3rd Dist. Mercer No. 10–09–15, 2010-Ohio-1256, 2010 WL 1173099, ¶ 20; *Heidebrink, supra,* at ¶ 28. The appellate court held at ¶ 23 and ¶ 24:

> "Since Discover Bank is attempting to collect on an account applying a variable rate that may have exceeded the statutory rate set either by Ohio or Delaware law, and applied late fees to which the debtor may not have assented, it has not established that it is entitled to judgment as a matter of law. Upon remand, the trial court will need to determine whether Delaware or Ohio law should be applied to verify the applicable interest rates. For the reasons explained above, the documents presented by Discover Bank in its pleadings do not establish, to any degree of mathematical certainty, the amount of money due on the account. Therefore, we conclude that Discover Bank has not established that it is entitled to judgment on the pleadings."

**{¶75}** Based upon the law set forth above, as well as our de novo review of the record, we find reasonable minds could come to but one conclusion and that is that Citibank has failed to establish that Hine assented

to any explicitly set forth interest rate over the statutory limit.  As such, the trial court erred in granting Citibank's motion for a directed verdict as to the precise amount of damages awarded.  We sustain Hine's second assignment of error and remand the matter for a determination as to whether South Dakota or Ohio law should be applied to verify the applicable interest rates.

### ASSIGNMENTS OF ERROR THREE, FOUR, AND FIVE

{¶76} Because the above assignments of error all challenge the trial court's imposition of sanctions pursuant to Civ.R. 11 and R.C. 2323.51, we will consider Hine and Kastner's arguments jointly.

### STANDARD OF REVIEW

{¶77} Civ.R. 11 provides that for pleadings, motions, and other documents signed by attorneys representing parties in a case, the signature of an attorney "constitutes a certificate by the attorney * * * that the attorney * * * has read the document; that to the best of the attorney's * * * knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."  The rule further provides that "[f]or a willful violation of this rule, an attorney * * *, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule." *See Capital*

*One Bank v. Day,* 176 Ohio App.3d 516, 2008-Ohio-2789, 892 N.E.2d 932, at ¶ 9.

**{¶78}** "We will not reverse a court's decision on a Civ.R. 11 motion for sanctions absent an abuse of discretion. *State ex rel. Fant v. Sykes*, 29 Ohio St.3d 65, 505 N.E.2d 966 (1987). An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Worrell v. Ohio Police & Fire Pension Fund,* 112 Ohio St.3d 116, 2006-Ohio-6513, 858 N.E.2d 380, ¶ 10." *Capital One Bank v. Day,* at ¶ 8, quoting *State ex rel. Dreamer v. Mason,* 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510, at ¶ 18.

**{¶79}** "R.C. 2323.51 provides for an award of attorney fees to a party harmed by 'frivolous conduct' in a civil action." *Rose v. Cochran*, 4th Dist. Ross No. 14CA3445, 2014-Ohio-4979, at ¶ 35, quoting *Moss v. Bush,* 105 Ohio St.3d 458, 2005–Ohio–2419, 828 N.E.2d 994, fn. 3. "The General Assembly vests the decision whether to award sanctions, including an award of reasonable attorney fees, in the court." *State ex rel. Striker v. Cline,* 130 Ohio St.3d 214, 2011–Ohio–5350, 957 N.E.2d 19, ¶ 10; R.C. 2323.51(B)(1) ("The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct"). The trial court's

decision whether to award sanctions under R.C. 2323.51 will not be reversed absent an abuse of discretion. *Striker* at ¶ 11.

{¶80} When the question regarding what constitutes frivolous conduct calls for a legal determination, such as whether a claim is warranted under existing law, an appellate court is to review the frivolous conduct determination de novo, without reference to the trial court's decision. *Ogle v. Greco,* 4th Dist. Hocking No. 15CA2, 2015-Ohio-4841, at ¶ 30; *Natl. Check Bur. v. Patel,* 2nd Dist. Montgomery No. 21051, 2005–Ohio–6679 at ¶ 10; *accord Riverview Health Inst., L.L.C. v. Kral,* 2nd Dist. Montgomery No. 24931, 2012–Ohio–3502, ¶ 33.

## LEGAL ANALYSIS

{¶81} "Civ.R. 11 employs a subjective bad-faith standard to invoke sanctions by requiring that any violation must be willful. *Riston v. Butler,* 149 Ohio App.3d 390, 2002-Ohio-2308, 777 N.E.2d 857, (1st Dist.), at ¶ 9; *Ransom v. Ransom,* 12th Dist. Warren No. 2006–03–031, 2007-Ohio-457, at ¶ 25." *Day, supra,* at ¶ 10, quoting *State ex rel. Dreamer,* 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510, at ¶ 19.  Thus, any violation must be willful; negligence is insufficient to invoke Civ.R. 11 sanctions. *Oakley v. Nolan,* 4th Dist. Athens No. 06CA36, 2007-Ohio-4794, at ¶ 13.

{¶82} "The United States Supreme Court has observed that the

purpose of Fed.R.Civ.P. 11, which is analogous to Civ.R. 11, is to curb abuse of the judicial system because '[b]aseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay.' *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398, 110 S.Ct. 2447 (1990). The court noted that the specter of Rule 11 sanctions encourages civil litigants to ' "stop, think and investigate more carefully before serving and filing papers." ' *Day, supra,* at ¶ 11, quoting Amendments to Federal Rules of Civil Procedure (1983), 97 F.R.D. 165, 192 (March 9, 1982 letter from Judge Walter Mansfield, Chairman, Advisory Committee on Civil Rules)." *Moss v. Bush,* 105 Ohio St.3d 458, 2005-Ohio-2419, 828 N.E.2d 994, at ¶ 21.

{¶83} Frivolous conduct implicated by R.C. 2323.51(A)(2)(ii) involves proceeding on a legal theory which is wholly unwarranted in law. *Ogle, supra,* at ¶ 29; *State Auto Mut. Ins. Co. v. Tatone,* 2nd Dist. Montgomery No. 21753, 2007–Ohio–4726, ¶ 8. "Whether a claim is warranted under existing law is an objective consideration." (Citations omitted.) *Hickman v. Murray,* 2nd Dist. Montgomery No. CA 15030, 1996 WL 125916, *5 (Mar. 22, 1996). The test is "whether no reasonable lawyer would have brought the action in light of the existing law. In other words, a claim is frivolous if it is absolutely clear under the existing law that no

reasonable lawyer could argue the claim." *Id.* Frivolous conduct subject to sanctions includes conduct by a party's counsel that "obviously serves to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation" or "is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." R.C. 2323.51(A)(2)(a)(i) and (ii).

{¶84} In this case, on February 1, 2017, Citibank filed notices of deposition of Karen L. Stanley and Katherine Hine, to be conducted in the Ross County Law Library. On February 21, 2017, Hine, through her counsel, filed a Motion of Defendant & Karen L. Stanley for Protective Order. The motion was supported by the Affidavit of Karen L. Stanley. The motion advised that Ms. Stanley had served as a paralegal under Attorney Kastner in Hine's case and argued that Ms. Stanley was bound by attorney-client privilege as follows:

> "Besides being on defendant's legal defense team, Ms. Stanley
> is a friend of the defendant and sometime spiritual advisor. Ms.
> Stanley appears to have been targeted because she has signed
> some checks which referenced a different account than the one
> alleged in the Complaint or checks that referenced an alleged
> account that there is no reason to believe was ever owned by

plaintiff. Her affidavit makes it clear that she has never had communication with plaintiff Citibank, as its attorney claims to want to discover. The only possible purposes of this subpoena are harassment of non-party Stanley and defendant, or a fishing expedition that the non-party, Ms. Stanley, should not have to fund. * * * Non-party Stanley should not have to review multiple years' worth of e-mails, notes, or other documents, in order to determine when she communicated with plaintiff and the degree to which any such communication came within the attorney-client or clergy privilege. Non-party witness Stanley is a minister ordained by the State of Ohio."

{¶85} On April 10, 2017, Hine, Motion to Strike & Reply to Plaintiff's 3/7/17 Opposition to Protective Order Motion & to its Motion to Compel. This pleading was supported by Hine's affidavit which set forth as follows:

"2. I have been physically present and legally residing excluding in the Country of Uruguay since my arrival here in March, 2009. I have never departed from the Country of Uruguay since my arrival, not to visit the United States nor any other country- not ever. Although I remain loyal to America, I have no plans to ever return. * * *

3. I have also continued to maintain a U.S. mailing address, 189 E. Water Street Rear, Chillicothe, Ohio, which is an actual physical address. I did not object to the venue of this action being in Ross County for that reason. The statements I have made in response to the plaintiff's interrogatories and documents requests are true and accurate. I do not have the financial ability to leave my home in Uruguay and do not believe that given the ongoing political situation and level of violence in the U.S. currently that it would be physically safe for me to do so. I can be made available by SKYPE if plaintiff's attorneys wish to grill me on my lack of knowledge about the facts in this case."

{¶86} On April 12, 2017, the trial court granted Citibank's motion to compel. The order explicitly stated:

> "Defendant Katherine Hine is ordered to sit for a deposition, to be taken via electronic means to be selected by Plaintiff's counsel, but not to include SKYPE, at Plaintiff's costs, on or before May 31, 2017. If Ms. Hine fails to appear for a deposition to be taken by electronic means on or before May 31, 2017, she must appear in person at the Ross County Law Enforcement Complex * * * on or before June 30, 2017, pursuant to notice from Plaintiff's counsel, for an in-person deposition.
>
> Non-party Karen Stanley is ordered to appear for a deposition at the Ross county Law Enforcement Complex, * * *, on or before May 2, 2017. If Ms. Stanley is unable to appear for a deposition on May 2, 2017, she must so inform Plaintiff's counsel by April 17, 2017. If Ms. Stanley so notifies Plaintiff's counsel, she shall instead appear for a deposition on May 3, 2017,* * *."

{¶87} On May 15, 2017, Plaintiff's counsel filed a Motion for Sanctions for Failure to Comply with Court Order, and attached supporting documentation. In it, counsel argued that while Karen Stanley appeared for her deposition, Attorneys Kastner and Fitrakis failed to appear on her behalf, in violation of the court's previous April 12, 2017 order granting Plaintiff's Motion to Compel. On May 22, 2017, Attorney Kastner filed a "Motion to Strike Plaintiff's Motion for Sanctions & Objections to False Statements & Innuendoes in the Record."

{¶88} On June 7, 2017, Citibank, again noticed the deposition of Karen L. Stanley, to be conducted on July 12, 2017 and also noticed the deposition of Hine, to be conducted on June 16, 2017 in Ross County.

{¶89} On June 26, 2017, Plaintiff filed "Citibank's Supplemental Motion for Sanctions for Failure to Comply with Court Order." This motion was based on Hine's failure to appear for her deposition in violation of the April 12 court order. On September 1, 2017, Plaintiff filed "Citibank's Second Supplemental Motion for Sanctions." The trial court eventually scheduled October 19, 2017 as the date to hear all motions for sanctions.

{¶90} At the October 19, 2017 sanctions' hearing, Plaintiff's counsel, Robert C. Folland and David J. Dirisamer, attended in person and presented arguments on behalf of Plaintiff. No other attorneys or parties attended the hearing. Ms. Hine called the Court and reiterated a previous written request to participate by phone. Her request was denied. However, the record reflects she was allowed to listen to the proceedings via the cell phone of a personal representative, Debra McCabe. Additionally, Plaintiff presented the testimony of Attorney Thomas M. Spetnagel, Sr., a local Chillicothe practitioner, as to the reasonableness of the hours spent on the matter by Plaintiff's counsel and as to the reasonableness of the hourly rate charged by Plaintiff's counsel.

**{¶91}** Attorney Spetnagel testified he is licensed in the State of Ohio, U.S. District Court for the Southern District, Sixth Circuit Court of Appeals, and the U.S. Supreme Court.  He has practiced law for nearly 42 years in Ross County.  He testified his review of the court docket indicated there were 172 filings in what appeared to be a "rather straightforward collections case."  He also reviewed Ohio R. Prof Conduct 1.5, R.C. 2323.51, and related case law.[9]

1. <u>Sanction award for claimed trial preparation expenses.</u>

**{¶92}** The trial court awarded Citibank $18,150.00 for trial preparation expenses.  Hine argues there is no evidence that either Attorney Kastner or she committed sanctionable conduct.  Hine asserts they have been sanctioned due to: (1) Appellant's exercising her right to a jury trial; (2) unfounded accusations of "name-calling"; and, (3) unfounded accusations that Hine and her attorney created needless delay in this matter.  For the reasons which follow, we disagree with Hine's arguments.

**{¶93}** Attached as Exhibit A to Citibank's Second Supplemental Motion for Sanctions is an email from Katherine Hine to Karen Stanley. When Ms. Stanley's deposition took place, she confirmed receipt of the

---

[9] Ohio R.Prof Con. 1.5(a) fees and expenses, provides that a lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee.

email from Hine. The March 30, 2015 email reads in pertinent part as

follows:

> "Hey, Karen: I wanted to let you know that we may as well stop paying the Sears' charge card. I just cancelled it. * * * As far as I'm concerned, we can stop paying the idiots. Yes- I know my credit rating will be shot-but-you know-it probably already is. Eventually I think I may make a deal with them on the balance after (if) we sell 116. * * * Maybe now we could pay down the other card a little bit more if need be. Yes-eventually they will sue me, but that's o.k. I should be able to find a way to defend it or at least stall until 116 hopefully sells. They may try to contact you, but you have my permission to hang up on them. * * *."

**{¶94}** On the hearing date, Attorney Folland presented the court with

an affidavit which had previously been attached to the Second Supplemental

Motion for Sanctions. The affidavit states in pertinent part:

> 44. I spent 45.8 hours preparing for and attending trial, including pre-trial filings such as a trial brief, jury instructions, witness and exhibit lists, a motion in limine and motions to quash.
>
> * * *
>
> 48. Mr. Garinger spent 26.8 hours preparing for and attending trial, including pre-trial filings such as a trial brief, jury instructions, witness and exhibit lists, a motion in limine and motion to quash.

**{¶95}** The trial court's entry states as follows:

> "Plaintiff is granted attorney fees of $18,150.00 incurred in preparation for, and for attending, the trial of this matter. Plaintiff's costs of trial preparation and appearance at trial were increased by the action of Ms. Hine and Defendant's counsel Davis [*sic*] Kastner, to obstruct and delay this matter, including

actions in discovery and in failing to attend Court hearings and the trial in this matter, in violation of Civil Rule 11 and Ohio Revised Code 2323.51. The Court awards Plaintiff attorney fees only for the two attorneys who attended the trial, Robert C. Folland and Paul N. Garinger. Darren Meade is not liable for amounts awarded herein. The Court finds that time spent by Mr. Folland and Mr. Garinger preparing for and attending trial was reasonable. Thus, the Court awards Plaintiff attorney fees for the 45.8 hours spent preparing for, and participating in, trial by Mr. Folland and the 26.9 hours spent preparing for, and participating in, trial by Mr. Garinger. The Court awards Plaintiff attorney fees for both time spent by Mr. Folland and Mr. Garinger at Mr. Garinger's charged rate in this matter of $250.00 per hour. Thus, Plaintiff is awarded $11, 450.00 in attorney fees for Mr. Folland's time in preparing and participating in trial. * * *"

**{¶96}** Attorney Spetnagel testified that he had reviewed the time expended and charges for trial preparation, as set forth in paragraphs 44-53 of the affidavit. He found the time and attorney fees to be reasonable. Having reviewed the entire record in this matter, we do not find the trial court's award of $18,150.00 in sanctions against Appellant and Attorney Kastner for attorneys' fees to be an abuse of discretion.

**{¶97}** Paragraph 54 of the First Amended Complaint alleges that Hine made payments until March 2015. The March 30, 2015 email in which Hine advised Karen Stanley to stop paying on the credit card, verified by Karen Stanley in her brief deposition, essentially constitutes an admission that Appellant owed the debt herein to Citibank. To thereafter deny she owed the debt caused unnecessary delay, needless increase in the cost of

Citibank's litigation, and was not supported by a good faith argument. We find Appellant's defense to be frivolous conduct under R.C. 2323.51. Additionally, the email shows her intent to deliberately "stall" the proceedings, i.e. "sanctionable conduct."

{¶98} Attorney Kastner's duty under Civ.R. 11 was to sign all pleadings, motions, and documents in the case, certifying good ground to support Appellant's defense and certifying the case filings were not interposed for delay. If Appellant did not absolutely direct her attorney to "stall" the proceedings, as of the time she provided the email in discovery, Attorney Kastner certainly knew or should have known her defense was meritless and she was using counsel to file unnecessary pleadings for purposes of delay. In this case, the record reveals, until his discharge by Appellant, Attorney Kastner signed all pertinent pleadings.

{¶99} Given the amount of the judgment for money's owed on Hine's credit card in this matter, the fees awarded for purposes of sanction are extraordinary. However, given this record, the expert testimony as to the reasonableness of the hours spent and fees charged, and the court's findings, we do not find the court abused its discretion. We find no merit to the argument that there was no evidence of sanctionable conduct justifying the fee award for trial preparation.

2. Fee awarded for Attorney Garinger's participation at trial.

{¶100} A portion of the attorney fee award, $6,700.00, was in conjunction with Attorney Paul Garinger's participation at trial. Hine argues Attorney Garinger participated due to the "lead attorney's lack of experience." Hine points out that sanctions are intended for sincere ethical breaches and are not to be used as punitive measures. She concludes that this portion of the award against her is an abuse of the court's discretion. Again, we disagree with Hine's argument.

{¶101} The October 19, 2017 sanctions hearing transcript reveals Attorney Folland addressed the issue of Attorney Garinger's participation as follows:

> "* * * Your Honor, with respect to that * * * after the first trial had ended, I had mentioned to you that this was the first time I had ever been in front of a jury and kind of enjoyed the process. The fact of the matter is I'm in court probably three or four days a week. The reality of a commercial litigation practice is it's very rare that you would have a jury with respect to that. * * * the aspect that was novel for me would have been the jury aspect of it. Everything else is something I've done many, many, many times, including the examination of the witnesses and the like, and what that - - the net result of that was asking Mr. Garinger to attend trial with me. I think it certainly justified having two attorneys present for the matter with the jury. * * * Mr. Garinger, for example, did the voir dire and assisted with all issues relating to jury instructions and the like, and that's why I asked him to get involved because those are areas where I don't' have the same expertise that he does * * *."

The Court:   You mentioned that this was a jury trial.  I've reviewed the file and it appears that the defendants requested the jury, is that your understanding?

Mr. Folland: Yes, it is, your honor.  Plaintiff did not request a jury in this case.

{¶102} Thereafter, the trial court's entry on sanctions further stated:

"Plaintiff is awarded $6,700.00 for Mr. Garinger's time in preparing for and participating in trial.  Plaintiff is not awarded any additional costs or expenses incurred in preparing for, and participating in trial."

{¶103} Again, based on our thorough review of the record, we find the trial court did not abuse its discretion with regard to the portion of the sanctions award which was directed to Attorney Garinger's $6,700.00 fee. Attorney Spetnagel testified as to the reasonableness of the time spent and hours charged in this matter.  We do not view the sanction as a punitive measure directed at Appellant's exercising her right to a jury trial.  Appellant Hine, herself, is an attorney.  Rather, both Attorney Kastner and Ms. Hine knew or should have known of the risk of interposing unnecessary delays in court proceedings involving a debt she apparently knew she owed.  Again, we find no merit to Hine's argument as to the portion of the award for Attorney Garinger's preparation and participation at trial.

3. Sanction awarded as a result of the failure to take Hine's deposition.

{¶104} Hine also argues the trial court abused its discretion as a result of failed efforts to take her deposition, and in the absence of any sanctionable conduct on her part. For the reasons which follow, we disagree. The "failed efforts to take Hine's deposition," is more aptly characterized as Hine's repeated failure to comply with court orders. Again, based on the entire record of pleadings and transcripts which wholly demonstrate in and of themselves a successful effort to thwart and delay these proceedings, the March 2015 email provided in discovery succinctly summarizes the entire delay tactic.

{¶105} As indicated above, in the email, Hine acknowledged the debt she owed, in addition to an admitting that she intended to "stall" the proceedings. Attorney Folland's affidavit attached to his motion for sanctions sets forth in pertinent part:

> 34. Ms. Hine failed to appear for her deposition on June 16, 2017.
>
> 35. I spent a total of 3.9 hours working on matters related to Ms. Hine's scheduled June 16, 2017 deposition and the subsequent Supplemental Motion for Sanctions.
>
> 36. Mr. Dirisamer spent a total of 10.9 hours working on matters related to Ms. Hine's scheduled June 16, 2017 deposition and the subsequent Supplemental Motion for Sanctions.
> * * *

38. Thus, the total amount incurred by Citibank for attorneys' fees and costs related to Ms. Hine's failure appear for her deposition on June 16, 2017, as ordered by the Court's April 12, 2017 order, is $4,318.63."

{¶106} Citibank also requested charges related to mileage costs, court reporter costs, and transcript of Ms. Hine's June 16, 2017 deposition. Attorney Spetnagel testified he had reviewed the firm billing as related to the attempt to depose Katherine Hine, and based on the amount of time set forth in Folland's affidavit, paragraphs 33-39, he found the amount of time expended was reasonable and the charges were reasonable. Factually, the trial court found as follows as relates to Hine's efforts to avoid deposition:

"Plaintiff is granted attorney fees of $4,266.20 for the failure of Ms. Hine to attend her deposition on June 16, 2017. Ms. Hine's deposition was noticed in accord with the Court's April 12, 2017 Order Granting Plaintiff's Motion to Compel. That order required Ms. Hine to sit for an electronic deposition, in a manner selected by Plaintiff, in Uruguay in May, 2017. If Ms. Hine did not sit for an electronic deposition in Uruguay in May, 2017, Ms. Hine was required to appear for a deposition in June, 2017 in Chillicothe, Ohio, at a time selected by Plaintiff. Ms. Hine did not sit for an electronic deposition in Uruguay in May, 2017, and did not appear for her noticed deposition in Chillicothe, Ohio, on June 16, 2017. The amount awarded to Plaintiff represents only the attorney fees incurred by Plaintiff, and does not include any other costs or expenses incurred by Plaintiff."

{¶107} We find no merit to Hine's argument that she did not commit sanctionable conduct. We further find the trial court did not abuse its discretion with regard to the fee awarded as sanction for Hine's failure to

comply with the trial court's orders and allow Citibank to depose her in either in Uruguay or Ross County, Ohio.

{¶108} Based on the foregoing, we hereby overrule Hine's third, fourth, and fifth assignments of error.

ASSIGNMENT OF ERROR SIX

{¶109} We have already addressed the propriety of the trial court's sanctions awards above.  Under this assignment of error, Hine generally argues that: (1) she was denied her right of due process to an impartial finder of fact; (2) she and her attorney were the subject of disparate treatment from the Plaintiff attorneys; and (3) the record in this matter shows evidence of bias.  Hine cites Judge Nusbaum's rulings and comments from 8/1/17; 8/3/17; 8/8/17;10/19/17; 11/8/17; and 11/15/17, arguing that the rulings "cast new light on the degree to which appellants could have reasonably ever expected unbiased rulings based on the merits rather than Nusbaum's clearly growing dislike of appellants and their criticism."  She further cites the "savage nature" of Judge Nusbaum's rulings which reasonably give the appearance of judicial bias.  Hine asserts: "[T]he circumstances of what the public would certainly see as judicial bias may or may not have anything to do with Nusbaum's ties to Matthew Schmidt, as explained in the Affidavit of Disqualification."  Hine concludes: "Whatever the reason, Due Process was

seriously undercut." For the reasons which follow, we find no merit to these contentions.

1. Due Process

**{¶110}** A fair trial in an impartial tribunal is a basic requirement of due process. *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623 (1955). *Cooke v. United Dairy Farmers,* 10th Dist. Franklin No. 05AP-1307, 2006 WL 4365, at ¶ 42. Both our state and federal Constitutional due process rights provide for notice and the opportunity to be heard. *O'Rourke v. O'Rourke,* 4th Dist. Athens No. 17CA37, 2018-Ohio-4031, at ¶ 42. *See Fifth Third Mtge., Co. v. Rankin,* 4th Dist. No. 11CA8, 2012–Ohio–2806, at ¶ 14; *Columbia Gas Transm., L.L.C. v. Ogle,* 4th Dist. Hocking No. 10CA11, 2012–Ohio–1483, at ¶ 12. Appellant contends the trial court frustrated her reasonable and repeated efforts to be heard.

**{¶111}** Appellant has directed us by date to various rulings of the trial court, while making sweeping and unsubstantiated accusations of the court's unfairness. " 'If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out.' " *Watson v. Highland Ridge Water and Sewer Assn., Inc.,* 4th Dist. Highland No. 12CA12, 2013-Ohio-1640, at ¶ 18, quoting *Thomas v. Harmon,* 4th Dist. No. 08CA17, 2009–Ohio–3299, ¶ 14, quoting *State v. Carmen,* 8th Dist. No. 90512, 2008–

Ohio–4368, ¶ 31. " 'It is not the function of this court to construct a foundation for [an appellant's] claims.

{¶112} We have thoroughly reviewed the trial court's rulings and pronouncements on the dates Hine has cited. In the interest of brevity, we set forth the following dates and our conclusions in summary form as follows:

- The August 1, 2017 ruling granting Citibank partial summary judgment on the issue of standing and denying Hine's motion for summary judgment is a decision setting forth legal conclusions.

- The August 3 jury trial transcript is 208 pages long and Hine does not direct us to specific portions of the transcript evidencing denial of due process, disparate treatment, or judicial bias.

- The August 8, 2017, journal entry granting directed verdict and judgment to plaintiff in the amount of $15,013.83 and the court's pronouncement in open court sets forth nothing other than legal conclusions.

- The October 19, 2017 hearing transcript on all motions for sanctions filed by both plaintiff and defendant and Hine does not direct us to any certain portions of the hearing transcript.

{¶113} Hine also directs our attention to the November 8, 2017 ruling as a result of the sanctions hearing captioned "Order and Judgment." The trial court found in pertinent part:

"Plaintiff's costs of trial preparation and appearance at trial were increased by the action of Ms. Hine and Defendant's counsel, Davis [sic] Kastner, to obstruct and delay this matter, including actions in discovery and in failing to attend Court

hearings and the trial in this matter, in violation of Civil Rule 11 and Ohio Revised Code 2323.51."

{¶114} Finally, Hine directs our attention to the November 15, 2017 entry captioned "ORDER AND SUPPLEMENTAL JUDGMENT GRANTING IN PART PLAINTIFF CITIBANK, N.A.'S MOTION FOR COSTS AS A PREVAILING PARTY. This entry sets forth the court's ruling as to costs for the filing fees for the complaint, the first amended complaint, and the witness fee for the deposition subpoena to Karen Stanley. The entry denied Citibank's motion for costs for preparation of deposition transcripts. The entry also clarified that the court's judgment was subject to pre-judgment and post-judgment interest and set forth the pertinent accrual dates. The entry is set forth in specific legal terms and does not contain commentary from the trial judge. We see no way in which this entry demonstrates any denial of due process, disparate treatment, or judicial bias as relates to Appellants.

{¶115} Based on our resolution of assignments of error three, four, and five above, finding propriety with regard to the trial court's award of various sanctions, we again do not find evidence of disparate treatment, judicial bias, or a lack of due process directed at Appellant and her counsel.

2. Disparate Treatment

{¶116} Black's Law Dictionary, Abridged Sixth Edition, defines

"disparate treatment" as "Differential treatment of employees or applicants

on the basis of their race, color, religion, sex, national origin, handicap, or

veteran's status. The Equal Protection Clause does not tolerate disparate

treatment of defendants based solely on their economic status. *State v.*

*Bailey,* 4th Dist. Highland No. 16CA1, 2016-Ohio-7249, at ¶ 13. *See Griffin*

*v. Illinois,* 351 U.S. 12, 76 S.Ct. 585 (1956). And, discrimination suits fall

into two general types, those based on disparate treatment of one or more

individuals based on discriminatory policies, and those based on facially

neutral policies which have a disparate impact on protected classes.

*Goodyear Atomic Corp. v. Tanner,* 4th Dist. Scioto No. 385, 1985 WL 8300,

(Aug. 20, 1985), at *2.

{¶117} Hine argues Judge Nusbaum was unusually preoccupied with

the nature of Kastner's representation of Hine "to the point where it had to

be made clear to him by Kastner's affidavit that trial counsel was to be

Robert Fitrakis as he informed Nusbaum * * * because Kastner is not able to

make court appearances due to crucial defense contract work in which he is

involved during the day." Hine argues Judge Nusbaum never applied

similar scrutiny to the roles of the "various Javitch Block attorneys." As

evidence, Hine asserts that Nusbaum's sanctioning Kastner was designed to

force Hine to incur additional expense in retaining an attorney which would

pass muster with Judge Nusbaum and be willing to deal with the

"atmosphere of judicial terrorism created in this case."

{¶118} Hine's argument has no merit. The Complaint was filed in

April 2016. Attorney Kastner signed the Motion to Dismiss filed in

response on May 4, 2016. The Answer to Plaintiff's First Amended

Complaint was filed on April 10, 2017. Although not signed by hand, the

Answer was submitted by Attorney Fitrakis and Attorney Kastner, with

Attorney Fitrakis' name noted on the certificate of service.

{¶119} Attorney Fitrakis appeared at the April 2017 motions hearing.

Judge Nusbaum noted that his hearing notice dated March 1, 2017 stated

"trial counsel shall appear at the hearing." Judge Nusbaum inquired as to

whether Attorney Fitrakis was going to try the case. Attorney Fitrakis

stated: "At this point, I can't make that clear statement. I thought I was

filling in."

{¶120} Attorney Folland further attempted to clarify the matter:

"Could I be heard with respect to that? I had met Mr. Fitrakis
before approximately five minutes ago. When I inquired as to
where Mr. Kastner was or why he did not appear, he said he did
not know. He said he had just received a call this morning to
come."

{¶121} On April 26, 2017, Appellant filed a pleading captioned:

Notice Re Court's Scheduling."  In Paragraph 7, Appellant informed that

Attorney Kastner does not make court appearances in this case due to his

responsibilities with contract work involving the U.S. military."  The Local

Rules of the Ross County Court of Common Pleas, "Rule 9: Trial Attorney"

provides as follows:

> "9.01  Unless otherwise ordered, * * * all parties not appearing
> IN PROPRIA PERSONAL shall be represented of record by a
> "trial attorney." Unless such designation is changed, the trial
> attorney shall attend all hearings, conferences, and the trial
> itself unless otherwise excused."

{¶122} Because of Attorney Kastner's inability to make court

appearances, it is unfortunate that he chose to undertake representation of

Hine.  In *Dayton v. Baker,* 86 Ohio St.3d 1999-Ohio-345, 711 N.E.2d 66, the

court observed:

> "Before they enter full-time practice, lawyers need to
> understand their duties as 'officers of the court.' They need to
> learn to care about the law, about their clients, and about their
> own image as professionals. * * * Respondent put himself at a
> disadvantage at the outset by not being properly prepared to
> manage a professional law practice."

{¶123} We think it reasonable that given Attorney Kastner had

entered an appearance in the case since shortly after its commencement, had

not requested permission to withdraw from the case, failed to attend a

motions hearing to decide significant pretrial issues, and apparently failed to

apprise the attorney covering the motions hearing for him of the full extent

of the substitute attorney's representations, it was not in any way unexpected or shocking that the trial court would inquire as to the nature and scope of Attorney Kastner's representation in the matter. The trial court's inquiry was reasonable in light of the circumstances. The record is devoid of evidence or indication that the trial court treated Hine and her attorney in any manner disparate to that of which he treated Citibank's counsel.

   3. Judicial Bias

**{¶124}** " 'Judicial bias has been described as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State v. Gerald*, 4th Dist. Scioto No. 12CA3519, 2014-Ohio-3629, at ¶ 51, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus. In *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147 (1994), the Supreme Court held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during

the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."  On the other hand, "[t]hey may do so [support a bias challenge] if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." (Emphasis sic.) *Id. Culp v. Olukoga,* 2013–Ohio–5211, 3 N.E.3d 724 (4th Dist.), at ¶ 55; quoting *State v. Dean,* 127 Ohio St.3d 140, 2010–Ohio–5070, 937 N.E.2d 97, ¶¶ 47–48.

{¶125} Further, as we noted in *Culp* at ¶ 55: " 'A trial judge is presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity. *Corradi v. Emmco Corp.* (Feb. 15, 1996), 8th Dist. Cuyahoga No. 67407, 1996 WL 65822 [at 3] citing *State v. Wagner*, 80 Ohio App.3d 88, 93, 608 N.E.2d 852 (12th Dist. 1992); citing *State v. Richard,* 8th Dist. Cuyahoga No. 61524, 1991 WL 261331 (Dec. 5, 1991).  Bias against a party is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party. *In re Adoption of Reams,* 52 Ohio App.3d 52, 59, 557 N.E.2d 159 (10th Dist. 1989).' *Frank Novak & Sons, Inc. v. Brantley*, *Inc.,* 8th Dist. Cuyahoga No. 77823, 2001 WL 303716 (Mar. 29, 2001)[.]"

**{¶126}** As Hine is aware, the Supreme Court of Ohio has held that an appellate court has no jurisdiction to vacate a trial court's judgment based on a claim of judicial bias. *Cooke v. United Dairy Farmers,* 10th Dist. Franklin No. 05AP-1307, 2006-Ohio-4365, at ¶ 45, citing *Beer v. Griffith,* 54 Ohio St.2d 440, 441-442, 377 N.E.2d 775 (1978). The remedy for suspected judicial bias is to file an affidavit of prejudice with the clerk of the Supreme Court of Ohio. *Polivka v. Cox,* 10th Dist. Franklin No. 02AP-1364, 2003-Ohio-4371. R.C. 2701.03 "provides the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced." *Jones v. Billingham,* 105 Ohio App.3d 8, 11, 663 N.E.2d 657 (2nd Dist.1995). Only the Chief Justice of the Supreme Court of Ohio or his designee has the authority to determine a claim that a common pleas court judge is biased or prejudiced. *Beer, supra*, 377 N.E.2d 775. Thus, an appellate court is without authority to pass upon issues of disqualification or to void a judgment on the basis that a judge should be disqualified for bias or prejudice. *Id.; State v. Ramos*, 88 Ohio App.3d 394, 398, 623 N.E.2d 1336 (11th Dist.1993).

**{¶127}** In this case, on July 19, 2017, Hine filed "Defendant's Notice Re Proposed Judicial Disqualification." On July 27, 2017, Attorney Kastner filed an affidavit of disqualification in the Supreme Court of Ohio, setting

forth alleged judicial bias on the part of Judge Michael Ward and Judge Nusbaum. On August 3, 2017, the Supreme Court of Ohio denied Kastner's affidavit to disqualify Judge Nusbaum.

{¶128} As indicated above, Appellant alleges bias in the "savage nature" of the trial court's rulings. " 'The existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party.' " *Cooke, supra,* at ¶ 46 (Internal citations omitted.)

{¶129} However, Hine has cited only the various rulings as evidence of the trial court's prejudice against her cause. A judge's rulings of law are legal issues, subject to appeal, and are not by themselves evidence of bias or prejudice. *Cooke, supra,* citing *Okocha v. Fehrenbacher,* 101 Ohio App.3d 309, 322, 655 N.E.2d 744 (8th Dist.1995). Judge Nusbaum's rulings throughout this case do not constitute evidence that the trial court was prejudiced or biased.

{¶130} For all the above reasons, we find no merit to Appellant's contention that she was denied due process of law, was treated disparately from other person, and was subjected to judicial bias. Accordingly, the sixth assignment of error is hereby overruled.

{¶131} Having reviewed the record, we find no merit to Appellant's second, third, fourth, fifth, and sixth assignments of error.  Accordingly, those assignments of error have been overruled.  However, in the first assignment of error, Hine asserted that Citibank did not prove that the right to charge interest on her account exceeded the statutory amount.  We found merit to this argument.  Therefore, we affirm in part, reverse in part, and remand the matter to the trial court for further proceedings consistent with this opinion.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. Costs shall be divided equally between the parties.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.: Concur in Judgment Only.


For the Court,


BY:  _____
Matthew W. McFarland, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**